|  |  |  |
|---|---|---|
| MUI T. LUU, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 18-cv-01897 |
| | : | |
| KEVIN ESTERLY, and | : | |
| LEHIGH VALLEY ACADEMY | : | |
| REGIONAL CHARTER SCHOOL, | : | |
| Defendants. | : | |
| | : | |

## O P I N I O N

**Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 14—Granted**

**Joseph F. Leeson, Jr.**                                              **February 14, 2019**
**United States District Judge**

## I.      INTRODUCTION

Plaintiff Mui T. Luu initiated this action against Defendants Kevin Esterly and the Lehigh

Valley Academy Regional Charter School (LVA), regarding an allegedly inappropriate

relationship between Esterly and A.Y., Luu's minor daughter. Luu asserts six claims against

Esterly and LVA, of which three are against LVA.[1] LVA filed a motion to dismiss. For the

reasons set forth below, the motion to dismiss is granted.

## II.      BACKGROUND[2]

Luu is the mother of two children: a boy and a girl. Am. Compl. ¶ 15, ECF No. 11. Luu

and her children met Esterly, his wife, and their daughters at the Heritage Baptist Church in

---

[1]      The Court stayed the action against Esterly pending the resolution of the criminal charges
filed against him in Pennsylvania state court on August 1, 2018. *See* Order, ECF No. 12.

[2]      The background information in this section is taken from the amended complaint and is
set forth as if true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The

2009. Am. Compl. ¶ 16. Luu's daughter, A.Y., became friends with Esterly's oldest daughter. Am. Compl. ¶ 18. Eventually, A.Y. and Esterly developed a relationship.[3] Am. Compl. ¶¶ 16–25.

In November 2017, Esterly changed, or caused to be changed, the emergency contact form for A.Y. at LVA and listed himself as A.Y.'s stepfather. Am. Compl. ¶ 33. Previously, the emergency contact form only listed Luu and a family friend. Am. Compl. ¶ 31. LVA failed to verify the change in the contact form with Luu and did not verify the change against the unchanged contact information for Luu's son, who also attended LVA. Am. Compl. ¶¶ 34–35.

On February 9, 2018, Luu attempted to pick up A.Y. from LVA but a school representative told her that Esterly previously picked her up. Am. Compl. ¶¶ 40–41. This was the first time LVA informed Luu that A.Y.'s emergency contact form listed Esterly as stepfather and that he signed her out of school on ten prior occasions. Am. Compl. ¶ 42. Luu confronted Esterly about picking up her daughter and inappropriate text messages he sent to her daughter. Am. Compl. ¶ 44. Luu also instructed LVA not to release A.Y. or her son to any person except her. Am. Compl. ¶¶ 45–46. A few days later, Luu returned to LVA and discussed her concerns about Esterly and her daughter with the principal of LVA. Am. Compl. ¶ 47. The principal and Luu discussed contacting the police and applying for a protection from abuse order. Am. Compl. ¶ 48. They ended up contacting the Special Victims Unit regarding the situation. Am. Compl. ¶ 49.

---

background information focuses primarily on the allegations and facts as they relate to LVA because this opinion concerns only LVA's motion to dismiss.

[3] Luu's amended complaint alleges that Esterly claimed the relationship "was a father-daughter-like relationship," Am. Compl. ¶ 25, but the amended complaint is otherwise vague as to the nature of the relationship.

On March 5, 2018, around 7:05 a.m., Luu dropped A.Y. off at the bus stop. Am. Compl. ¶ 56. The bus was scheduled to pick up students at 7:09 a.m. Am. Compl. ¶ 56. A.Y. never made it to LVA. Am. Compl. ¶¶ 57–60. LVA did not notify Luu of A.Y.'s absence and Luu only became aware that A.Y. was missing when she did not arrive home from school. Am. Compl. ¶¶ 59–62. Failing to notify Luu that her daughter was absent violated a written policy or custom which dictated that parents would be made aware when their children were absent from school. Am. Compl. ¶ 13. It was later determined that Esterly picked up A.Y., drove her to the Philadelphia International Airport, purchased one-way tickets for the pair to Cancun, Mexico, and took her out of the country. Am. Compl. ¶¶ 63, 68.

## III.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for its "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Rules generally demand "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) (internal quotations omitted)). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff

stated a plausible claim. *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    ANALYSIS

As referenced above, Luu's amended complaint asserts three claims against LVA. In Count IV, Luu asserts a claim against LVA for the violation of her rights under the Fourth and Fourteenth Amendments. In Count V of the amended complaint, Luu asserts a negligent infliction of emotional distress claim against LVA, alleging that LVA's actions and inactions regarding A.Y. caused Luu to suffer emotional distress. In Count VI, Luu requests punitive damages for LVA's violation of the Fourth and Fourteenth Amendments and negligent infliction of emotional distress.

LVA moves to dismiss each of these claims on a variety of grounds. *See* Mot. Dismiss, ECF No. 14. For the reasons set forth below, its motion is granted.

## A. Deprivation of Constitutional Rights

In Count IV, Luu asserts a claim against LVA for the violation of her rights under the Fourth and Fourteenth Amendments.[4] Specifically, Luu argues that LVA deprived her of her rights to the custody, care, and management of her child without either procedural or substantive due process. LVA moves to dismiss, arguing that it is entitled to immunity under the Eleventh Amendment, and even if the Eleventh Amendment doesn't apply, the amended complaint does not establish that the school denied Luu a federally protected right.[5] Defs.' Mem. Supp. Mot. Dismiss 7–18, ECF No. 14.

Luu asserts her constitutional claims against LVA under 42 U.S.C. § 1983. Section 1983 provides, in part, that:

> [e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of a State or Territory. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights; rather, it provides a remedy for violations of rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

---

[4]  Luu's amended complaint is devoid of any factual matter that would state a violation of the Fourth Amendment. The facts alleged, and the reasonable inferences drawn therefrom, are legally insufficient to allege a deprivation of Luu's Fourth Amendment constitutional rights. Moreover, cases the Court reviewed in addition to those that the parties cite all involve parents' liberty interest in the custody, care and management of their children as a Fourteenth Amendment question, not one related to the Fourth Amendment. Therefore, the Court only analyzes her Fourteenth Amendment claim.

[5]  Because the Court dismisses Luu's amended complaint, LVA's argument that it has immunity under the Eleventh Amendment need not be addressed.

"The threshold question in any § 1983 lawsuit is whether the plaintiff has sufficiently alleged a deprivation of a constitutional right." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016). The constitution protects liberty interests that parents have in the custody, care and management of their children. *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997) (citing *Lehr v. Robertson*, 463 U.S. 248, 258 (1983); *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir. 1987)). Unless the government adheres to the requirements of procedural and substantive due process, "[t]he Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships." *Croft*, 103 F.3d at 1125.

In her amended complaint and her brief in opposition of the motion to dismiss, Luu argues deprivation of both substantive and procedural due process rights without making any clear distinction between the two. She appears to conflate the two doctrines.[6] Luu's claim undoubtedly invokes the substantive component of the Due Process Clause, but it does not

---

[6]    "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (internal quotations omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id*. at 333 (internal quotation marks and brackets omitted). On the other hand, "[t]he substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs in order to guarantee protection against government power arbitrarily and oppressively exercised." *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (internal quotation marks and brackets omitted).

Insofar as Luu claims a procedural due process violation based on the deprivation of her liberty interest in the custody, care and management of her child without a hearing or similar procedural safeguard, Luu's amended complaint does not contain sufficient factual matter to state a claim for relief under this theory. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that: (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

clearly assert a claim under the procedural component. Luu does not claim that LVA denied her the right to the custody, care and management of her child without according her appropriate procedural safeguards (*e.g.*, a hearing), but rather, that LVA was obligated to protect her rights in these circumstances. As such, the Court construes her argument to claim that LVA deprived her of her rights to the custody, care, and management of her child without substantive due process.

The Supreme Court explained in *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989), that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Deshaney,* 489 U.S. at 195. The Due Process Clause, the Supreme Court explained, is a limitation on the state's power to act, but it does not "impose an affirmative obligation on the State to ensure that those [life, liberty, and property] interests do not come to harm through other means." *Deshaney*, 489 U.S. at 195. Importantly, the Supreme Court held, as a general matter, a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. *Deshaney*, 489 U.S. at 197.

Building on *Deshaney* and the Supreme Court's suggestion that an individual may have due process protection where the state played a role in creating or enhancing the danger to which that individual was exposed, the United States Court of Appeals for the Third Circuit adopted the "'state-created danger' exception to the general rule that the Due Process Clause imposes no duty on states to protect their citizens from private harm." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 242 (citing *Kneipp by Cusack*, 95 F.3d at 1211). Under this exception, to assert a state-created danger claim, a plaintiff must plead:

> (1) the harm ultimately caused [by the state actor's conduct] was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a

discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170–71 (3d Cir. 2017) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)). Applying this test, the Court Concludes that Luu has not pled successfully a state-created danger claim.

### 1. Foreseeable and Fairly Direct Harm

The first element of the state-created danger test requires that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 245. Luu alleges in her complaint that she suffered psychological damage, emotional distress, infamy and notoriety, and economic loss.[7] As pleaded, the facts alleged in the amended complaint do not demonstrate foreseeability or a fairly direct connection between the harm and the actions of LVA. The harm here is too attenuated from LVA's actions nor at all foreseeable to support liability.

Both parties analogize the facts in this matter to those of *L.R. v. Sch. Dist. of Phila*. In that case, a kindergarten teacher released N.R., one of her students, to an unidentified adult. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 239. Before allowing the child to leave, the teacher asked the unidentified adult to produce identification and verification that the child had permission to leave school. *Id*. The unidentified adult failed to do so, but the teacher still allowed the child to leave

---

[7] Luu also makes bald assertions in her amended complaint and brief that this element is satisfied and concludes that the harm was foreseeable and fairly direct. As stated above, a court is not required to accept as true legal conclusions, *see Iqbal*, 556 U.S. at 678, nor is it required to accept these assertions. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997).

his classroom with the adult. *Id.* Later that day, the adult sexually assaulted the child off school premises, causing her significant physical and emotional injuries. *Id.* The child's parent and natural guardian, L.R., filed the lawsuit under 42 U.S.C. § 1983. *Id.* The United States Court of Appeals for the Third Circuit explained in *L.R. v. Sch. Dist. of Phila.* that the appropriate inquiry into whether the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions is whether there was "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 245 (internal quotations removed) (*Phillips*, 515 F.3d at 238). The risk of harm in releasing a five-year-old child to a complete stranger was obvious, the Third Circuit Court of Appeals declared.

In its opinion, the Third Circuit Court of Appeals compared the facts of *L.R. v. Sch. Dist. of Phila.* to those of *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). In *Morse*, a local resident with a history of mental illness entered a school through an entrance that was propped open to allow contractors to move materials in and out of the building and killed a teacher. The Third Circuit Court of Appeals declined to find the school's decision to allow the door to remain propped open a foreseeable or direct cause of the teacher's death because "school officials could not have foreseen that allowing construction workers to leave the school's rear entrance unlocked would result in the fatal shooting of a teacher by a trespasser." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 245. In *Morse*, there were no allegations that the school was aware of anyone posing a credible threat of violence to persons inside the school building or was aware of the killer's violent propensities. *Morse*, 132 F.3d at 908. The only facts that could have alerted the school to danger were previous security breaches that allowed unauthorized persons to gain access to the building and reports that the killer was seen loitering in the school area. *Morse*, 132

F.3d at 908. With those facts considered, the Third Circuit Court of Appeals held that the school could not have foreseen the danger to the teacher nor, as a matter of law, could the school's actions be said to have directly caused the attack. *Morse*, 132 F.3d at 910.

Luu depicts the facts of this case as identical to *L.R. v. Sch. Dist. of Phila*. This is not the case. In *L.R. v. Sch. Dist. of Phila*., the school released a five-year-old child to a stranger even after the stranger had failed to provide identification or verification that the child had permission to leave school. That the child was sexually assaulted, the Third Circuit Court of Appeals explained, was a fairly direct result of the school releasing the child to the stranger. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 245. LVA released A.Y. to Esterly several times before Luu instructed the school not to release A.Y. or her son to any person except her. After that point, the amended complaint does not include allegations that the school released A.Y. to Esterly. As alleged in the amended complaint, the harm that Luu claims, namely psychological damage, emotional distress, infamy and notoriety, and economic loss, is linked to Esterly taking A.Y. out of the country. And, *on that occasion, LVA did not release A.Y. to Esterly*. There is no allegation in the amended complaint that Esterly signed A.Y. out of school that day. When reviewing the amended complaint, it is apparent that the harm resulting from Esterly taking A.Y. out of the country is linked, tenuously at best, to LVA's conduct.

Other than Luu's conclusory allegations and conclusions in her amended complaint, she does not include any set of facts that would entitle her to relief. It cannot be said that LVA's actions directly caused her injuries. Luu has failed to plead adequately the foreseeable injury and fairly direct element of the test.[8]

---

[8]     The Court's finding that the first element of the test is not satisfied is dispositive, but for completeness, the Court considers all elements.

## 2. Conscience-Shocking Conduct

The Court next considers whether LVA's actions "shock the conscience." Under this element of the state-created danger test, "[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Mann*, 872 F.3d at 171 (quoting *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005)). "If the circumstances are highly pressurized, it is necessary to show intentional harm by the state actor; however, if the state actor has the benefit of deliberation, then all the plaintiff needs to show is deliberate indifference." *Id*. In circumstances falling somewhere in between, "the relevant inquiry is whether the state actor 'consciously disregarded a great risk of harm,' with the possibility that 'actual knowledge of the risk may not be necessary where the risk is 'obvious.''" *Mann*, 872 F.3d at 171 (citing *Sanford v. Stiles*, 456 F.3d 298, 310 (3d Cir. 2006) ("The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. In a 'hyperpressurized environment,' an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible, and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient.")).

On the facts as pled, the appropriate culpability standard here is deliberate indifference, because there is nothing to indicate that LVA faced circumstances requiring a quick decision or that a decision was made under highly pressurized circumstances. Rather, the school had time to make an unhurried judgment and, as such, the deliberate indifference standard applies. This conclusion is consistent with the precedent from the United States Court of Appeals for the Third Circuit. *See Mann.*, 872 F.3d at 171; *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 246; *Lesher v. Zimmerman*, No. 5:17-cv-04731, 2018 U.S. Dist. LEXIS 82037, at *11 (E.D. Pa. May 15, 2018).

The Third Circuit Court of Appeals defines deliberate indifference as "requiring a conscious disregard of a substantial risk of serious harm." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 246 (quoting *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015) (internal quotations omitted)). "[D]eliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 246 (quoting *Phillips*, 515 F.3d at 241).

Here, Luu has not alleged sufficient facts in the amended complaint, if proven, that would demonstrate LVA was deliberately indifferent, establishing a level of culpability that was conscience shocking. Accepting the allegations of the amended complaint as true, LVA was aware of the change to the emergency contact form, but not that it was incorrect. LVA further failed to verify the change in the contact information with Luu or against the contact information for Luu's son. Then, LVA allowed Esterly to sign A.Y. out of school on ten occasions between November 2017 and February 2018.

After LVA learned of the improper and incorrect change to the emergency contact form the school did not release A.Y. to Esterly again.

In March 2018, without any school involvement, Esterly picked up A.Y. and took her out of the country. LVA violated a written policy or custom that it would make a parent aware that a child was absent.[9] These facts do not show deliberate indifference. LVA had no knowledge of a risk of harm until Luu instructed the school not to release A.Y. or her son to any person except her, nor was the risk of harm so obvious that it should be known like in *L.R. v. Sch. Dist. of*

---

[9]    The amended complaint does not indicate the specifics of how or when Esterly picked up A.Y. Importantly however, the amended complaint does not allege that LVA released A.Y. to Esterly on this occasion.

*Phila.* where the kindergarten student was released to a total stranger. At worst, LVA was negligent in failing to heed its own written policy or custom.

Instead of making a substantive argument, Luu makes bald assertions that the conduct here, "as in the [*L.R. v. Sch. Dist. of Phila.*] case the action of the school shocks the conscience." Pl.'s Br. Opp'n Mot. Dismiss 11, ECF No. 15-1. Luu simply reiterates the facts of the case and argues that LVA's actions created a situation that destroyed her relationship with her daughter. However, Luu offers no basis to conclude that LVA's actions or inactions were so severe as to shock the conscious. While unfortunate, taking these allegations as true and drawing reasonable inferences therefrom, the amended complaint does not sufficiently allege facts that LVA was deliberately indifferent. As such, Luu has failed to plead that the school acted with a degree of culpability that shocks the conscience.

### 3. Foreseeable Victim

The next element of the state-created danger test requires that some sort of special relationship exist between the state actor and the plaintiff such that the plaintiff was a foreseeable victim of the state actor's conduct. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 247. This element arises from the state's duty to protect an individual when it imposes a limitation on that individuals' freedom to act on his own behalf. *See Deshaney*, 489 U.S. at 199–200 ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). "In other words, 'it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, *or other similar restraint of personal liberty*—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted

by other means.'" *Morrow v. Balaski*, 719 F.3d 160, 168 (3d Cir. 2013) (quoting *Deshaney*, 489 U.S. at 200 (emphasis added)).

With respect to the relationship between schools and their students, the United States Court of Appeals for the Third Circuit explained that "compulsory attendance laws and in *loco parentis* authority do not give rise to a special relationship between schools and their students." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 247 n.57 (citing *Morrow*, 719 F.3d at 171–72). The Third Circuit Court of Appeals arrived at this conclusion "informed by the fact that parents remain the primary caretakers, despite their children's presence in school." *Morrow*, 719 F.3d at 168 (internal quotation marks and brackets omitted). Depending on the circumstances, however, the Third Circuit Court of Appeals "left open the possibility that a special relationship between a school and its students could arise under certain unique and narrow circumstances, as when a school locks classroom doors or otherwise imposes limitations on a student's freedom to act on his own behalf." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 247 n.57 (internal quotations omitted). In *L.R. v. Sch. Dist. of Phila.*, the Third Circuit Court of Appeals found the question of whether the kindergartner in question was a foreseeable victim easily answered because the school had a policy in place prohibiting the release of pre-kindergarten through eighth grade students to an adult without proper documentation. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 247. ("This element is satisfied easily here. [The kindergartner] was a member of the discrete class of kindergarten children for whose benefit the School District's release policy had been instituted. In this sense, [the kindergartner] was a foreseeable victim of [the teacher]'s actions."). However, the Third Circuit Court of Appeals declined to address the question broadly and explained that it "never addressed the special relationship theory in the context of a school's youngest and most vulnerable students," but noted that "at some point, the age and/or dependency of certain

students in combination with restraints a school may place on its students may indeed forge a 'special relationship.'" *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 247 n.57.

In her brief, Luu only makes a conclusory statement that there is a relationship between herself as the Plaintiff and the school. She does not provide any support for this conclusion. Contrary to Luu's assertions, it cannot be said that there was the type of relationship between Luu and LVA to satisfy this element. As an initial matter, the Third Circuit Court of Appeals' guidance states clearly that there is not a special relationship between a school and a student unless there are certain unique and narrow circumstances present that would give rise to that relationship. *See L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 247 n.57. Luu's claim depends on an even more tenuous special relationship: one between a school and a student's parent. Luu analogizes her case to *L.R. v. Sch. Dist. of Phila.*, but that case involved violations of the kindergarten child's rights, not those of the parents. *L.R. v. Sch. Dist. of Phila.*, 60 F. Supp. 3d 584, 586 (E.D. Pa. 2014), *aff'd*, 836 F.3d 235 (3d Cir. 2016) ("Plaintiff L.R., the parent and natural guardian of N.R., filed the suit under 42 U.S.C. § 1983, alleging violations of N.R.'s rights under the Fourteenth Amendment against [defendants]."). Luu does not point to, nor has the Court found, any caselaw that recognizes a special relationship between a school and a student's parent. Because, as a matter of law, there exists no sort of special relationship between LVA and Luu such that Luu was a foreseeable victim of the school's conduct, this element is not satisfied.

### 4. Affirmative Use of Authority Creating or Increasing Danger

The fourth element of the state-created danger test "asks whether the state's conduct created or increased the risk of danger to the plaintiff." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 242. "It is misuse of state authority, rather than a failure to use it, that can violate the Due

Process Clause." *Bright*, 443 F.3d at 282. The focus on misuse rather than failure to use, has led the Third Circuit Court of Appeals to "repeatedly reject[ ] state-created danger claims in cases involving student-on-student school violence, even where school officials were alleged to have known of the dangerous conditions within the school that ultimately resulted in injury to the plaintiff, on the ground that the schools did not affirmatively act to create the danger." *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 610 (E.D. Pa. 2014) (citing *Morrow*, 719 F.3d at 178-79; *Brown v. Sch. Dist.*, 456 F. App'x 88, 89-90 (3d Cir. 2011); *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1376 (3d Cir. 1992)). Because of the "the inherent difficulty in drawing a line between an affirmative act and a failure to act," the Third Circuit Court of Appeals aids its analysis of this element by evaluating "whether the state actor's exercise of authority resulted in a departure from the status quo." *Gayemen v. Sch. Dist. of Allentown*, 712 F. App'x 218, 220 (3d Cir. 2017) (internal quotation marks and brackets omitted).

In *L.R. v. Sch. Dist. of Phila.* the teacher's release of the child to the unidentified adult exposed the child to a danger she should not have otherwise encountered in the safety of the classroom. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d at 243. On the other hand, in *Morrow v. Balaski*, the Third Circuit Court of Appeals held that a schools' choice to suspend a bully, rather than expel him as required by school policy, and then allow that bully to board the victims' school bus despite a no-contact order, represented a mere failure to act rather than an affirmative act. 719 F.3d at 176-79. *See also Stiles v. Grainger Cnty.*, 819 F.3d 834, 854-55 (6th Cir. 2016) (a school's failure to punish students, enforce the law or school policy, and refer assaults to appropriate persons represented mere failures to act rather than affirmative acts).

Here, Luu has not pled any facts to establish that LVA affirmatively acted to place her in danger or increased danger. Rather, her amended complaint attempts to morph LVA's failures to follow policies or common practices (failing to confirm the change to the emergency contact form for A.Y. per the school's policy or custom and failing to make Luu aware that her child was absent from school per the school's policy or custom) into affirmative acts. On this point, the Third Circuit Court of Appeals has routinely held that an alleged failure to enforce its own policies is not equivalent to an affirmative act. *See Gayemen*, 712 F. App'x at 221 ("The School District's failure to remove students from the school simply does not constitute an affirmative act, even if school policy required their removal."); *Morrow*, 719 F.3d at 178 ("[W]e decline to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act. . . ."); *see also Buonadonna v. Se. Delco Sch. Dist.*, No. 14-cv-2708, 2015 U.S. Dist. LEXIS 64383, at *7 n.6 (E.D. Pa. May 18, 2015) ([A] school's alleged failure to follow its own policies generally does not rise to the level of an affirmative act for the purposes of a state-created danger claim."). Without pleading facts of an affirmative act taken by LVA that created or increased the risk of danger to Luu, this element is not satisfied.

For the reasons above, the Court concludes that Luu has not sufficiently alleged the elements of a state-created danger claim.

### B. Negligent Infliction of Emotional Distress

In Court V, Luu alleges that LVA is liable for negligent infliction of emotional distress because of the school's actions and inactions regarding A.Y. Am. Compl. ¶¶ 121–22. In its brief, LVA argues that Pennsylvania's Political Subdivision Tort Claims Act provides immunity for charter schools. Defs.' Mem. Supp. Mot. Dismiss 6. Luu concedes this point. Pl.'s Br. Opp'n Mot. Dismiss 5 ("[Plaintiff] has pled that [LVA] is a state actor and if [LVA] agrees, or this court

determines that the school is a state actor—and [Plaintiff] argues they are—then [Plaintiff] agrees the [Political Subdivision Tort Claims Act] precludes this claim . . . .").

The Pennsylvania Charter School Law governs LVA. It provides that charter schools may sue and be sued to the same extent that political subdivisions can be sued. 24 P.S. § 17-1714-A(a)(2) (charter schools have the power to "[s]ue and be sued, but only to the same extent and upon the same condition that political subdivisions and local agencies can be sued"); *Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 442 F. App'x 681, 686 (3d Cir. 2011).

Under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541–8564, except as provided, local agencies and their employees are generally immune from claims for damages based upon any injury to a person or property. 42 Pa. Cons. Stat. § 8541. The eight exceptions are: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals. *Id*. § 8542.

Luu's claim for negligent infliction of emotional distress does not fall into any of those exceptions. *See Gray v. Great Valley Sch. Dist.*, 102 F. Supp. 3d 671, 681 (E.D. Pa. 2015) (dismissing negligent infliction of emotional distress claim because defendants were entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act); *June v. Spano*, No. 05-cv-1495, 2005 U.S. Dist. LEXIS 25681, at *21 (E.D. Pa. Oct. 27, 2005) (same). Therefore, the Court dismisses this Count for failure to state a claim upon which relief can be granted because under Pennsylvania law LVA is immune from Luu's claim.

### C. Punitive Damages

In Court VI, Luu requests punitive damages for LVA's violation of the Fourth and Fourteenth Amendments and negligent infliction of emotional distress. Am. Compl. ¶¶ 123–24.

LVA argues first that Luu cannot obtain punitive damages because it has demonstrated there are no valid causes of action against the school. Defs.' Mem. Supp. Mot. Dismiss 15. LVA argues further, that even if the Court determines Luu's claim is valid, municipalities are immune from punitive damages under § 1983. Defs.' Mem. Supp. Mot. Dismiss 15. Luu responds that her amended complaint does state a valid cause of action, as she demonstrated. Pl.'s Br. Opp'n Mot. Dismiss 15. Luu further argues that punitive damages may be argued to a jury in constitutional cases and this claim should not be dismissed. Pl.'s Br. Opp'n Mot. Dismiss 15.

Luu cites to no statute which allows for punitive damages for the types of claims she asserts. Instead, Luu makes a policy argument that punitive damages are appropriate in this circumstance to punish a violation of constitutional rights and deter future abuses of power. Pl.'s Br. Opp'n Mot. Dismiss 15. Luu also makes a conclusory assertion in her conclusion paragraph that "punitive damages are allowed as § 1983 is, by statute, a species of tort liability." Pl.'s Br. Opp'n Mot. Dismiss 16.

The general rule for municipalities is that "no punitive damages are allowed unless expressly authorized by statute." *Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003) (quoting *Newport v. Fact Concerts*, 453 U.S. 247, 260 n.21 (1981)). In fact, the Supreme Court held in *Newport v. Fact Concerts*, that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." 53 U.S. at 271. For purposes of § 1983, courts in this district have considered charter schools, like LVA, municipalities, and therefore not liable for punitive damages. *Schienblum v. Lehigh Valley Charter Sch. for the Arts*, No. 15-CV-6433, 2016 U.S. Dist. LEXIS 176424, at *12 (E.D. Pa. Dec. 20, 2016) (denying claim for punitive damages against a charter school); *Irene B. v. Phila. Acad. Charter Sch.*, No. 02-cv-1716, 2003 U.S. Dist. LEXIS 3020, at *49 n.29 (E.D. Pa. Jan. 29, 2003) (same). Accordingly, the Court dismisses this

Count because LVA is a municipal entity and punitive damages are not allowed against municipal entities.

## V.    REMAINING CLAIMS IN THE AMENDED COMPLAINT

After dismissing Counts IV, V, and VI, the only claims that remain in this case are state law claims against Esterly which allege intentional interference with child custody (Count I), intentional infliction of emotional distress (Count II), and punitive damages (Count III). Having dismissed the federal claims, this Court exercises its discretion and declines to exercise supplemental jurisdiction over the state law claims. *See Gallo v. Wash. Cnty.*, No. 08-cv-0504, 2009 U.S. Dist. LEXIS 7958, at *27-30 (W.D. Pa. Feb. 4, 2009) (using the Court's discretion to refuse to exercise supplemental jurisdiction and dismissing remaining state claims to be refiled in the proper state forum); *Atkinson v. Olde Economie Fin. Consultants, Ltd.*, No. 2:05-cv-772, 2006 U.S. Dist. LEXIS 54289, at *3-9 (W.D. Pa. Aug. 4, 2006) (dismissing a case without prejudice and remanding to state court for consideration of remaining state law claims after declining to exercise supplemental pendent jurisdiction over plaintiff's remaining claims because there were no claims remining in the case with jurisdiction pursuant to federal question, 28 U.S.C. § 1331, or diversity jurisdiction, 28 U.S.C. 1367(c)). Therefore, the remaining claims are dismissed without prejudice to be refiled in the proper state court.

## VI.    CONCLUSION

For the reasons stated above, LVA's motion to dismiss is granted. The Court will not allow Luu leave to file a second amended complaint with respect to Counts IV, V, or VI.[10] A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[10]    As a matter of law, there is no sort of special relationship between LVA and Luu such that the she was a foreseeable victim. Further, LVA is immune from a claim of negligent infliction of emotional distress under Pennsylvania law and is immune from punitive damages under 42 U.S.C. § 1983. Amendment to these Counts would be futile.